**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

JAMES WEISMANN, an individual,

Plaintiff,

v.

CALIBER HOME LOANS, INC., a corporation, and DOES 1 to 100,

Defendant.

CASE NO. 16cv203-GPC(BLM)

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

[Dkt. No. 19.]

Before the Court is Defendant Caliber Home Loans, Inc.'s ("Caliber") motion to dismiss all claims alleged in the first amended complaint. (Dkt. No. 19.) An opposition and reply were filed. (Dkt. Nos. 21, 22.) Based on the reasoning below, the Court GRANTS Defendant's motion to dismiss with prejudice.

**Background**

On January 27, 2016, the case was removed from state court. (Dkt. No. 1.) On August 8, 2016, the Court granted Defendant's motion to dismiss all causes of action with leave to amend. (Dkt. No. 13.) On August 26, 2016, Plaintiff filed a first amended complaint ("FAC") alleging state law causes of action of negligence, intentional infliction of emotional distress and bad faith breach of contract. (Dkt. No. 14.)

Around September 30, 1999, Plaintiff James Weismann ("Plaintiff") purchased the property located at 11591 Shadow Ranch Road, La Mesa, CA 91941. (Dkt. No. 14,

FAC ¶ 6.) Around March 12, 2008, Plaintiff refinanced the property with a new loan from Countrywide Bank, FSB for $417,000.[1] (Id. ¶¶ 7, 8.) Defendant Caliber Home Loans, Inc. ("Defendant") is the mortgage servicing company. (Id. ¶ 2.) The loan is a "federally related loan, as defined in Title 12, Chapter X, Part 1024, Subpart A, Section 1024.2 and subject to other federal statutes, regulations and federal public policy." (Id. ¶ 10.)

Plaintiff alleges that Caliber is "subject to the federal Truth in Lending Act, the federal Real Estate Settlement Procedures Act, the federal Dodd-Frank Act, [t]he California Foreclosure Reduction Act, the federal Consumer Financial Protection Bureau (CFPB), the Federal Trade Commission (FTC), Federal Reserve Board (FRB), the federal Consumer Financial Protection Bureau (CFPB), the federal Office of the Comptroller of the Currency (OCC), Federal Deposit Insurance Corporation (FDIC), and California Department of Business Oversight and regulations such as Title 24, Section 203.355 of the Code of Federal Regulations, Fannie Mae (Federal National Mortgage Association) (a government sponsored enterprise (GSE)), Ginnie Mae (Government National Mortgage Association, Freddie Mac (Federal Home Loan Mortgage Corporation) (a government sponsored enterprise (GSE)) Title 24, Section 203.355 of the Code of Federal Regulations and in statements of policy." (Dkt. No. 14, FAC ¶¶ 13, 20.)

Plaintiff also alleges that Defendant is also subject to federal housing public policy which requires mortgage servicing companies to have "reasonable policies and procedures that have the servicing company act in good faith toward the borrower." (Id. ¶¶ 13, 20.) The public policy is "reflected in statutes such as 12 U.S. Code Sec 3701-3717. 12 U.S. Code 3751 the federal Truth in Lending Act, the federal Real Estate Settlement Procedures Act, the federal Dodd-Frank Act, The California Foreclosure Reduction Act, the federal Consumer Financial Protection Bureau (CFPB),

---

[1]The FAC states that a copy of the deed of trust for the Shadow Ranch property is attached as Exhibit A but no exhibits are attached to the FAC. (Dkt. No. 14, Compl. ¶ 9.)

the Federal Trade Commission (FTC), Federal Reserve Board (FRB), the federal Consumer Financial Protection Bureau (CFPB), the federal Office of the Comptroller of the Currency (OCC), Federal Deposit Insurance Corporation (FDIC), and the California Department of Business Oversight and regulations such as Title 24, Section 203.355 of the Code of Federal Regulations, Fannie Mae (Federal National Mortgage Association) (a government sponsored enterprise (GSE)), Ginnie Mae (Government National Mortgage Association, Freddie Mac (Federal Home Loan Mortgage Corporation) (a government sponsored enterprise (GSE)) Title 24, Section 203.355 of the Code of Federal Regulations and in statements of policy." (Id. ¶ 15(emphasis in original).) Plaintiff also alleges a violation of California housing law public policy. (Id. ¶¶ 19, 20.)

Plaintiff alleges that a notice of default was recorded twenty-five months after the date of his last payment in May 2013.[2] (Id. ¶ 25.) Plaintiff's loan amount, along with the late fees, is about $600,000. (Id. ¶ 27.) Caliber is entitled to receive about $250 per month even while the loan is in default and Caliber will receive all the money once the foreclosure sale is complete. (Id.) According to Plaintiff, Caliber has an "in-house policy of never filing a notice of default when they could and should on time . . . [which is] in direct violation of their contract with the mortgage pool trustee, and this policy was in direct violation of the above requirements by the federal and California laws and entitles to have reasonable policies and procedures towards borrowers and Plaintiffs." (Id. ¶ 14.) Caliber delayed filing a notice of default to increase its revenue unlawfully in order to receive revenue in the amount of millions of dollars per month.

[2]Defendant's RJN reveals that after Plaintiff defaulted on his loan in 2011, on April 7, 2011 a notice of default and election to sell under deed of trust was recorded. (Dkt. No. 19-2, D's RJN, Ex. B.) Caliber was not the servicer of the loan at that time. (See id.) On January 23, 2013, the pending foreclosure proceeding was cancelled. (Id., Ex. C.) In 2013 Plaintiff filed for Chapter 13 bankruptcy three times. (Id., Exs. D-F.) In May 2013, Plaintiff alleges he defaulted on his loan which was also around the time he filed for bankruptcy the second time. (Dkt. No. 14, FAC ¶ 25; Dkt. No. 19-2, D's RJN, Ex. E.) In June 2015 another notice of default was recorded. (Dkt. No. 19-2, D's RJN, Ex. G.) In September 2015, a notice of trustee's sale was recorded. (Id., Ex. H.) Plaintiff filed his Complaint in November 2015. (Dkt. No. 1-2, Compl.)

(Id.) "Over 20% of the notices of default were filed in San Diego County over eight months late at the time this lawsuit was filed." (Id.)

According to the FAC, "Federal housing law public policy concerning foreclosures of Federally related residential loans in California requires mortgage servicers to pursue the nonjudicial foreclosure of Federally related residential loans in a timely and competent manner with due diligence." (Id. ¶ 21.) The "Federal housing law policy" sets reasonable time periods for when a notice of default must be filed after default and a reasonable time period for completion of the foreclosure process. (Id. ¶ 22.)

## Discussion

### A. Request for Judicial Notice

Defendant filed a request for judicial notice. (Dkt. No. 19-2.) Plaintiff has not opposed.

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), a Court may consider exhibits attached to the complaint, matters subject to judicial notice, or documents necessarily relied on by the complaint whose authenticity no party questions. See Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007); Lee v. City of Los Angeles, 250 F.3d 668, 688–689 (9th Cir. 2001); United States v. Ritchie, 342 F.3d 903, 908 (9th Cir.2003) ( "A court may, however, consider certain materials-documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice-without converting the motion to dismiss into a motion for summary judgment.").

Here, Defendant seeks judicial notice of documents of public record containing documents filed with the San Diego County Recorder's office and the docket report of Plaintiff's three Chapter 13 bankruptcy petitions. (Dkt. No. 12-2.) Since Plaintiff does not object and the Court may take judicial notice of "matters of public record", Lee, 250 F.3d at 688-89, the Court GRANTS Defendant's request for judicial notice.

**B. Legal Standard on Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. See Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990). Under Federal Rule of Civil Procedure 8(a)(2), the plaintiff is required only to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

A complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, --- U.S. ----, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted). In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint, and draws all reasonable inferences in favor of the plaintiff. al-Kidd v. Ashcroft, 580 F.3d 949, 956 (9th Cir. 2009).

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992) (quoting Schreiber Distrib. Co. v. Serv-Well

Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986)). In other words, where leave to amend would be futile, the Court may deny leave to amend. See Desoto, 957 F.2d at 658; Schreiber, 806 F.2d at 1401.

**C. Failure to Cure Deficiencies in First Amended Complaint**

In the Court's prior order granting Defendant's motion to dismiss, it concluded that Plaintiff did not assert any facts or legal authority that his loan was subject to 12 U.S.C. § 3701 *et seq*. and 24 C.F.R. § 203.355, and that he failed to allege a plausible claim of a "Federal housing law public policy" based on agency statutes, regulations, rules and/or guidelines. (Dkt. No. 13 at 6.) Furthermore, the Court explained that even if there was a "Federal housing law public policy" that created a private right of action, Plaintiff did not allege that Caliber was the servicer at the time he defaulted on his loan and subject to liability under the alleged "Federal housing law public policy."

Plaintiff has failed to cure the deficiencies when he filed the The FAC still alleges a "Federal housing law public policy" based on the similar or same statutes, regulations, rules and/or guidelines alleged in the prior complaint and fails to amend to cure the deficiencies that the Court noted in its order. (See Dkt. No. 14, FAC ¶¶ 13, 20.) Moreover, general allegations that Defendant violated numerous statutes and regulations, by merely reciting their titles, are not sufficient to state a claim. See Iqbal, 129 S. Ct. at 1940. As such, Plaintiff fails to state a claim based on "Federal housing law public policy." As for a violation of "California housing public policy", which is summarily alleged, Plaintiff fails to identify the legal basis for such a violation. Accordingly, Plaintiff fails to state a claim for violation of "California housing public policy."

The Court also noted that even if the alleged "Federal housing law public policy" created a private right of action, Plaintiff had not alleged that Caliber was the servicer at the time he defaulted his loan in May 2013. The FAC does not cure this deficiency and fails to allege facts that Caliber was the servicer of the loan at the time Plaintiff defaulted on his loan. For this reason also, Plaintiff fails to state a claim based on

"Federal housing law public policy."

Lastly, in the prior order, the Court granted Defendant's motion to dismiss the state law claims of negligence, intentional infliction of emotional distress and breach of the covenant of good faith and fair dealing because these causes of action were premised on Defendant's violation of "Federal housing law public policy" and failing to comply with alleged foreclosure time requirements. Since Plaintiff failed to state a claim based on Defendant's failing to timely file a notice of default, then the state law causes of action based on the same failure necessarily failed. Again, the state law causes of action in the FAC are still dependent on an alleged violation of "Federal Housing law public policy." (Dkt. No. 14, FAC ¶¶ 15, 30, 39.) Therefore, because the FAC has not corrected the deficiencies noted in the Court's prior order, the Court GRANTS Defendant's motion to dismiss the state law causes of action.

Alternatively, even if Plaintiff alleged an underlying "Federal housing law public policy," Plaintiff's state law claims still fail to state a claim. Defendant moves to dismiss the state law causes of action of negligence, intentional infliction of emotional distress, and bad faith breach of contract.[3] (Dkt. No. 19-1.) Plaintiff opposes.

**D. Negligence**

Plaintiff alleges Caliber was negligent for failing to timely file a notice of default on Plaintiff's loan when he defaulted. (Dkt. No. 14, FAC ¶ 12.) This failing to timely file a notice of default is based on a "Federal housing law public policy" which is reflected in

> statutes such as 12 U.S. Code Sec 3701-3717. 12 U.S. Code 3751 the federal Truth in Lending Act, the federal Real Estate Settlement Procedures Act, the federal Dodd-Frank Act, The California Foreclosure Reduction Act, the federal Consumer Financial Protection Bureau (CFPB), the Federal Trade Commission (FTC), Federal Reserve Board (FRB), the federal Consumer Financial Protection Bureau (CFPB), the federal Office of the Comptroller of the Currency (OCC), Federal Deposit Insurance Corporation (FDIC), and the California Department of Business Oversight and regulations such as

---

[3]Defendant also argue that the Court should dismiss the civil conspiracy claim, (Dkt. No. 19-1 at 9); however, the FAC does not allege a civil conspiracy cause of action.

> Title 24, Section 203.355 of the Code of Federal Regulations, Fannie Mae (Federal National Mortgage Association) (a government sponsored enterprise (GSE)), Ginnie Mae (Government National Mortgage Association, Freddie Mac (Federal Home Loan Mortgage Corporation) (a government sponsored enterprise (GSE)) Title 24, Section 203.355 of the Code of Federal Regulations and in statements of policy.

(Id. ¶ 15.)

Under California law, the elements of a claim for negligence are that: (1) defendant had a legal duty to plaintiff, (2) defendant breached this duty, (3) defendant was the proximate and legal cause of plaintiff's injury, and (4) plaintiff suffered damage. Cal. Civ. Code § 1714; Merrill v. Navegar, Inc., 26 Cal. 4th 465, 500 (2001). "The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide." Vasquez v. Residential Invs., Inc., 118 Cal. App. 4th 269, 278 (2004). As a general rule, under California law, "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." Nymark v. Heart Fed. Sav. & Loan Ass'n, 231 Cal. App. 3d 1089, 1095-96 (1991). However, "liability to a borrower for negligence arises only when the lender actively participates in the financed enterprise beyond the domain of the usual money lender." Id. at 1096. This general duty of care has been applied to loan servicers. See Osei v. Countrywide Home Loans, 692 F. Supp. 2d 1240, 1249-50 (E.D. Cal. March 3, 2010) (defendant was lender and servicer); McCormick v. U.S. Bank, NA, 12cv433-AJB(WMC), 2013 WL 990946, at *7 (S.D. Cal. Mar. 13, 2013) (stating that general rule that a financial institution owes no duty of care to a borrower applies to loan servicers); Shepherd v. Am. Home Mortg. Servs. , No. Civ. 09-1916 WBS GGH, 2009 WL 4505925, at *2 (E.D. Cal. 2009) ("[L]oan servicers do not owe a duty to the borrowers of the loans they service.").

The question of whether a servicer owes a duty of care to a borrower is subject

to a balancing of the so-called Biakanja[4] factors. Anderson v. Deutsche Bank Nat'l Trust Co Americas, 649 Fed. App'x 550, 552 (9th Cir. 2016) (applying Biakanja factors to determine if duty of care existed between servicer and borrower). These factors include: "the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm." Biakanja, 49 Cal. 2d at 650. As noted by the court of appeal in Lueras v. BAC Home Loans Serv., LP, 221 Cal. App. 4th 49, 67 (2013), in addressing the Biakanja factors concerning whether there is a duty of care to modify a loan, the court noted that the harm suffered by the borrower as a result of the lender's delay was not closely connected to the lender's conduct because it was the borrower's inability to repay the loan that required the borrower to seek a loan modification. Similarly, in this case, the notice of default was necessitated by Plaintiff's default on the loan and not Caliber's delay in filing the notice of default so no "moral blame" attaches to the servicer's conduct.

In balancing the Biakanja factors in a factually similar case with factually similar arguments[5], the district court in Jose held that there was no duty of care owed by servicer to borrower where the borrower alleged that the servicer filed a late notice of default. Jose v. Select Portfolio Serv., Inc., Case No: 16cv106-MMA(RBB), 2016 WL 4581394, at *5 (S.D. Cal. Aug. 8, 2016) (no duty of care between borrower and servicer where plaintiff alleges a late filing of a notice of default).

Similarly, the Court concludes that the Biakanja factors does not impose a duty of care where the negligence claim is based on delays in filing a notice of default. See Anderson, 649 Fed. App'x at 552 (no duty of care where borrower alleged delays in the

---

[4] Biakanja v. Irving, 49 Cal.2d 647 (1958).

[5] The Court notes that Plaintiff's attorney in Jose is the same attorney as in this case.

processing of their loan modification applications).

Plaintiff does not sufficiently allege facts that Caliber, by filing a notice of default, exceeded the scope of its conventional role as a servicer. Moreover, Plaintiff concedes he defaulted on his loan; therefore, Caliber had authority to file a notice of default. Furthermore, Plaintiff has not demonstrated that any alleged delay in recording a notice of default is unlawful or against an alleged "public policy." Therefore, the Court concludes that Plaintiff has not demonstrated Caliber owed Plaintiff a duty to not file a late notice of default. Accordingly, the Court GRANTS Defendant's motion to dismiss the negligence cause of action.

**E. Intentional Infliction of Emotional Distress**

The FAC generally alleges that Defendants' conduct of delaying the filing of the notice of default was done with "malicious and wanton intent and reckless disregard for the probability of causing Plaintiff to suffer humiliation, mental anguish, and emotion and physical distress." (Dkt. No. 14, FAC ¶ 31.) Defendant "engaged in this outrageous conduct towards Plaintiff with reckless disregard for the probability of causing Plaintiff to suffer severe emotional distress. As a proximate result of said outrageous conduct, Plaintiff has suffered and continues to suffer extreme mental distress, and humiliation all to her damage in amounts to be proven at trial." (Id. ¶ 32.)

Defendant argues that debt collection efforts, by themselves, are not sufficient to support a claim of intentional infliction of emotional distress. Plaintiff opposes but cites to no cases to support his position that a filing a late notice of default constitutes extreme and outrageous conduct.

The tort of intentional infliction of emotional distress is comprised of three elements: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffered severe or extreme emotional distress; and (3) the plaintiff's injuries were actually and proximately caused by the defendant's outrageous conduct. Cochran v. Cochran, 65 Cal. App. 4th 488, 494 (1998). The California Supreme Court has set

a "high bar" to demonstrate severe emotional distress. Hughes v. Pair, 46 Cal. 4th 1035, 1051 (2009). "Severe emotional distress means 'emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it.'" Id. (citation omitted).

Courts have held that recording a notice of default and a threat of foreclosure do not constitute outrageous conduct. Anguiano v. Bank of America, No. 12cv1752-IEG(BLM), 2013 WL 485765, at *2 (S.D. Cal. Feb. 6, 2013) (citing Aguinaldo v. Ocwen Loan Servicing, LLC, No. 12cv1393-EJD, 2012 WL 3835080, at *7 (N.D. Cal. Sept. 4, 2012) ("as a matter of law that foreclosing on property does not amount to the 'outrageous conduct'"); Mehta v. Wells Fargo Bank, N.A., 737 F. Supp. 2d 1185, 1204 (S.D. Cal. 2010) ("The fact that one of Defendant[-lenders'] employees allegedly stated that the sale would not occur but the house was sold anyway is not outrageous as that word is used in this context."); Harvey G. Ottovich Revocable Living Trust Dated May 12, 2006 v. Wash. Mut., Inc., No. 10-2842 WHA, 2010 WL 3769459, at *4-5, *13 (N.D. Cal. Sept. 22, 2010) (neither act nor threat of foreclosure by itself does not constitute outrageous conduct)). "Where a lending party in good faith asserts its right to foreclose according to contract, however, its conduct falls shy of 'outrageous,' however wrenching the effects on the borrower." Davenport v. Litton Loan Serv., LP, 725 F. Supp. 2d 862, 884 (N.D. Cal. 2010).

Here, Plaintiff alleges that the notice of default should have been filed earlier than it was but based on the above cited case, such conduct does not arise to extreme and outrageous conduct. Accordingly, the Court GRANTS Defendant's motion to dismiss the claim for intentional infliction of emotional distress.

**F. Breach of the Covenant of Good Faith and Fair Dealing**

The FAC alleges "bad faith breach of contract" or breach of the covenant of good faith and fair dealing. (Dkt. No. 14, FAC ¶ 33.) Defendant improperly construes this cause of action as a breach of contract claim and moves to dismiss on this basis. Contrary to Defendant's position, the FAC specifically asserts a cause of action for

breach of the covenant of good faith and fair dealing.

"'Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.'" Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc., 2 Cal. 4th 342, 371 (1992) (citing Rest. 2d Contracts, § 205). "This covenant [of good faith and fair dealing] not only imposes upon each contracting party the duty to refrain from doing anything which would render performance of the contract impossible by any act of his own, but also the duty to do everything that the contract presupposes that he will do to accomplish its purpose." Harm v. Frasher, 181 Cal. App. 2d 405, 417 (1960) (citing Bewick v. Mecham, 26 Cal. 2d 92, 99 (1945)). "It is universally recognized the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." Carma Developers, 2 Cal. 4th at 373. "Importantly, it is also well settled "[t]he prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties, since the covenant is an implied term in the contract." Smith v. City and Cnty. of San Francisco, 225 Cal. App. 3d 38, 49 (1990). "Without a contractual underpinning, there is no independent claim for breach of the implied covenant." Fireman's Fund Ins. Co. v. Maryland Casualty Co., 21 Cal. App. 4th 1586, 1599 (1994).

Here, the FAC does not allege a contract between Plaintiff and Defendant. Therefore, there can be no cause of action for breach of the covenant of good faith and fair dealing. To the extent Plaintiff is alleging breach of the terms of the Deed of Trust, or the promissory note, there is no allegation that Caliber was a party to those documents either. Accordingly, the Court GRANTS Defendant's motion to dismiss the cause of action for breach of the covenant of good faith and fair dealing.

**G. Leave to Amend**

In the Court's prior order, Plaintiff was granted leave to amend the complaint to correct the deficiencies noted by the Court and failed to do so. Moreover, Plaintiff does not seek leave to amend the FAC. Based on the Plaintiff's failure to amend and

allege facts to support his allegations, the Court concludes that any further leave to amend would be futile. See DeSoto., 957 F.2d at 658.

**Conclusion**

Based on the above, the Court GRANTS Defendant's motion to dismiss all state law causes of action with prejudice. The hearing set for November 18, 2016 shall be **vacated.** The Clerk of Court shall close the case.

IT IS SO ORDERED.

DATED: November 14, 2016

HON. GONZALO P. CURIEL
United States District Judge